At this time we'll hear United States v. Anderson. Good morning, Your Honor. My name is Peter Tamayo and I represent Mr. Anderson. I did not represent Mr. Anderson in the District Court. I was appointed soon to CJA for the appeal. This is a case, Your Honor, presents an issue as to whether Mr. Anderson, who was a young man, about 23 at the time of his plea, should be entitled to have his plea back, his guilty plea back, because he was confused about the nature of the charges he was pleading to at the time. He entered the plea pursuant to a plea agreement, but the plea agreement was silent as to an allocution of the offense itself, of the facts of the offense. So the only facts of the offense were what were contained in the allocution. The government did not make its own allocution at the time of the plea. It was only what Mr. Anderson himself said. And what Mr. Anderson said the government describes as unequivocal, but I would argue as anything but unequivocal. He was clearly confused about the nature of the charge, and he was confused regarding whether he had to enter a plea because of a prior conviction and a prior arrest he had. He brought this to the attention of the court in advance of his sentencing. He pled guilty. The court, before magistrate, the district judge, Judge Stein, accepted the plea about, I think, about a week later. And then, subsequently, Mr. Anderson, through his then-counsel, Mr. Lee, asked to have his plea back. He said, I was confused. He says, I want to go back to where I was before. The government opposed that motion. I should indicate there was a step in between where Judge Stein relieved Mr. Lee and assigned new counsel. New counsel made a formal motion, including an affidavit from Mr. Anderson. The government opposed that without any factual evidence. The government, the only thing the government presented was a very odd police report, a complaint indicating that basically on the night of this alleged shooting, somebody described as a, I think, six-foot-tall black man in the Bronx shot somebody else. No connection between that and the defense to which Mr. Anderson had pled, even if that document itself would be the type of document that the court could rely upon. And we would indicate that this court in United States v. Gionis had cautioned district courts about accepting unsworn statements as evidence. But that document doesn't have a time of the, I'm sorry, doesn't indicate the time of the offense, but more importantly doesn't indicate the same location that Mr. Anderson had pled to. Mr. Anderson's allocution- Specific as, what's it, A256? I mean, his words under oath are that he possessed and brandished a firearm in connection with a narcotics conspiracy. And specifically he says on February 8th, 2010, I took out and displayed a firearm in the vicinity of 1895 Woodside Avenue. And it was in connection with his distributing controlled substances at Burnside Avenue in the Bronx. Why are we even talking about whether the police report is adequate in light of that allocution? Because Mr. Anderson disavowed that allocution prior to sentencing. Right, but now such disavows are looked at with some skepticism. They generally are, Your Honor, but the cases in which they have been looked at with skepticism have involved a more robust indication of the facts than we had here. Here we have very little facts. This is the only allocution. If you look at the three cases cited by the government, Gonzalez, Maher, and Hirsch, in each of those cases there was much more factual, much more of the facts were in the record than there was here. Your needs should have been set here in order for, I won't say he'd be satisfied, but in order for there to be no question that this plea would not have been withdrawn. Well, I don't disagree with Judge Raji that if that statement had not been disavowed, if that statement had stood, it certainly would be sufficient. But what we have here is Mr. Anderson disavowing that statement prior to sentencing. Well, he told you one thing one day, Your Honor, and now I'm telling you something else now? Well, yes, Your Honor, but he has some more support than just his statement. He has the evidence that he was, in fact, incarcerated on the day of the alleged shooting. He has... You know that that's in the context of a release in the afternoon and all of this happened in the evening. Only we only have... That doesn't really help him very much at all. Except the only evidence that happened in the evening is the police report. In other words, he is allocution. He doesn't say I shot somebody in the evening. He says he shot... You're basically saying that he lied during his allocution. Of course he has to say that. That wasn't truthful, Your Honor. Of course he's saying... Under oath. I have no doubt about it. He has to, in order to disavow that, he's indicating that he made a false... And courts are very skeptical of such pleas. Now he's saying, well, the police report shows I was, or there's evidence I was in jail. But not for the entire day. And he's not saying, you know, I was in this area in the evening or I wasn't in the evening, whatever. I mean, I'm just not sure where the district court abused its discretion in finding that it had a knowing involuntary plea and it wasn't going to allow withdrawal, which is the standard here, right? That's clear. Okay. That's clear. However, Your Honor, I think where the judge did abuse his discretion was not by pursuing it. By developing a record. He had, there was ample time, there was ample presence when this could have been developed. It was dismissed out of hand on a very rote application. And what would have been developed? The discrepancy between the time that the government's alleging this event took place and the time that Mr. Anderson was incarcerated and where he was.  I think he doesn't get into a precise discussion because frankly, Your Honor, there is no evidence of a precise time. Judge Stein also abused his discretion by saying that Mr. Anderson had to dispute or provide an alibi, I guess, to where he was at a time and place that was never set forth. There's no, the information to which he pled does not set forth the time and place of the offense. There is no other evidence that came in. This police report is just sitting out there. You know what's also interesting, Your Honor? If you look at the PSR, there's no victim impact statement. Somebody was supposed to have been shot and presumably went to the hospital according to that police report. Where's the victim impact? It's just sitting out there. This looks like a convenient set of facts that the government is trying to pin on this individual to have him enter a plea. And he is asking for a plea, asking for a plea back is also clearly against his own interest because if he committed that shooting, this is a good plea deal. He was looking at a 20-year mandatory minimum but for this plea deal in which the government agreed to take 7 years mandatory minimum. But he's asking for his plea back and he's pursuing this appeal with the idea that he may be facing a much greater sentence. And I think that that's something that the court should have taken into account. I think Judge Stein should have asked some additional questions. And I think Judge Stein also abused his discretion by not developing a record as to explain the time it took for him to bring the motion from the time that he entered the plea. You've reserved three minutes for a button? Yes, and I used a little bit of it, so. That's quite all right. We'll hear you then. Thank you. Good morning. Good morning. May it please the court, Molly Bracewell representing the government on appeal. Here, the district court did not abuse its discretion in deciding not to allow the withdrawal of Anderson's plea for the following four reasons. First, Anderson waited six months to move to withdraw his plea and has never offered an explanation for this delay. Whether Anderson had met his burden was appropriately considered in light of this delay. Second, Anderson's plea was knowing and voluntary as the transcript of the plea proceeding made clear. He acknowledged under oath that he understood the charges against him, that he was satisfied with his representation, and that he was, in fact, guilty. Judge Stein did not overlook Anderson's claim of confusion, but instead he considered and rejected it based upon what the transcript otherwise revealed, that despite struggling momentarily during Judge Netburn's questioning when asked about an agreement, Anderson had an opportunity to confer with his counsel and then admitted in plain language and under oath to the offense conduct. Third, the defendant's claim of innocence is baseless. Nothing the defendant has put forward is inconsistent with the conduct to which he allocated, specifically his involvement in the incident on February 8th, 2010. The defendant attempts to make much of the government's lack of evidence, but this doesn't prove anything of his innocence, but reflects the timing of his pretrial plea. The government had no need and no opportunity to present evidence to prove its case. The defendant also has raised questions about the NYPD complaint report, and this is a document that was produced to the defendant in the course of discovery and submitted to the district court for the limited purpose of rebutting Anderson's claim that he had proved his innocence by showing he was released on bail on the afternoon of February 8th, 2010. Even setting the report aside, Anderson's allegations considered on their own, as Judge Stein found, does not establish that Anderson did not brandish a weapon that day. Fourth and finally, Anderson confirmed his satisfaction with Mr. Lee's representation when he entered the plea. In evaluating the ineffective assistance of counsel claim, Judge Stein had a developed factual record that included Lee's and Anderson's affidavits and Anderson's comments about his counsel made under oath on the record. Anderson has not shown any deficiencies in Mr. Lee's conduct, nor did he allege, much less establish, that he would have gone to trial but for these errors and it would have been rational under these circumstances. In any event, any confusion that his counsel might have caused or failed to clarify was more than cured by Judge Netburn's careful and thorough explanation of the charge. Unless the panel has any questions, the government is prepared to rest on its brief. Thank you. Usually this court, as you all know, defers on ineffective assistance of counsel claims and says they're better brought up in 2255 proceedings. Is there any reason we should do that today? Well, there are two ineffective assistance of counsel claims before the court, the first against Mr. Lee. I think there's no reason to defer on that claim because the record below is fully developed and includes Mr. Lee's statements. The district court had an opportunity in the first instance to make a ruling rejecting the claim. As for Mr. Dinerstein's, the claim against Mr. Dinerstein, we respectfully submit that it would be appropriate to defer for later consideration because we have no statements from Mr. Dinerstein responding to the allegations. Thank you. I'd like to begin with Judge Hall's comment about whether it should be deferred. And I agree with counsel that the allegations regarding Lee are fully briefed and available, and they were ruled on by the district court. But we have an unusual circumstance here. This case is going back to Judge Stein. We have agreed to that. There was an error in the imposition of the period of supervised release. Judge Stein mistakenly believed it had to be five years as a mandatory minimum. The government conceded in its brief for a remand. So the question here, what's the scope of the remand? In this case, Your Honor, we would say that the whole matter ought to be reversed and sent back so that the judge, since we're going to be in the district court, the usual arguments in terms of judicial economy and the opportunity for defense counsel to respond to the allegation of ineffective assistance of counsel don't apply. If the case is going to go back and be reviewed, those issues can be addressed by the district court then. What the government is suggesting is, no, let's send the case back to the district court. Let the district court correct the sentence. And then at that point, start the whole 2255 process again. Where that is unjust is that this is a case in which the sentence is 84 months, which means he would be released in approximately six years, approximately 72 months. He served about half of that. The process that the government is suggesting would likely use up most, if not all, of that time. Here we can have the efficiency of having the case referred back to the district court. Let the district court make findings regarding the confusing issues, which I've raised as to a lack of a basis, as well as address the ineffective assistance of Mr. Dinerstein in terms of making the motion, since obviously one argument that's going to be raised is, why didn't Mr. Dinerstein explain the six-month period in bringing the motion? That's on Mr. Dinerstein and Mr. Lee. That ought to be developed. And that can be decided at that point. We'll have a decision back in a few months, and then it will come back. If there's going to be an appeal, there'll be an appeal at that time, and you'll have a completed record. If this panel wants to retain jurisdiction so that you have all these issues and can be brought back, you have that procedure, or it can come back to another panel. It's not for me to tell you how to handle that. But I think this is what makes this case unusual, because we don't have to wait. And waiting would deny Mr. Anderson any effective relief in terms of the sentence. Your Honors, beyond that, I would just say that the- I just go back to, you know, the government says they brought up that report to rebut Mr. Anderson's statement, but it doesn't rebut anything because there's no indication that that report has anything to do with the crime here, other than the government's statement, which is insufficient. It's just argument. Thank you very much. Thank you both. We'll reserve decision.